**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**CHRISTOPHER C. CARTER**,

     **Plaintiff,**

**vs.**                      **Case No. 4:10cv34-SPM/WCS**

**SANDRA HUGHES,
and MR. LEE,**

     **Defendants.**

_____/


## REPORT AND RECOMMENDATION

The *pro se* Plaintiff filed a second amended civil rights complaint, doc. 20, on May 14, 2010. Service was directed, doc. 25, and Defendant Hughes filed an answer, doc. 23, a motion for summary judgment, doc. 24, and then filed an amended answer, docs. 30, 34. The amended answer was filed as document 31.[1] Plaintiff was provided a discovery period, doc. 27, and he filed his response in opposition to summary judgment, doc. 35, on September 2, 2010. This report and recommendation concerns only the summary judgment motion filed by Defendant Hughes.

---

[1] Service has just recently been carried out as to Defendant Lee, doc. 39, and a notice of appearance has been filed, doc. 40,, on December 2, 2010.

Plaintiff alleged in the amended complaint, doc. 20, that on June 28, 2008, Defendant Hughes struck Plaintiff numerous times in the face with her radio. Plaintiff alleged the incident was unprovoked and occurred in the laundry room of A-dormitory. Plaintiff alleged that he has suffered permanent disfigurement by the use of force, which violated his Eighth and Fourteenth Amendment rights.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment the Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If accomplished, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id*. An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts. Scott v. Harris, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* <u>Ricci v. DeStefano</u>, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Matsushita Elec. Industrial Co.</u>, 475 U.S. at 587 (internal quotation marks omitted), *quoted in* <u>Ricci v. DeStefano</u>, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

Defendant Hughes is a Correctional Officer employed at Taylor Correctional Institution, a prison facility within the Florida Department of Corrections. Doc. 24, ex. F (Hughes affidavit). At the time of the incident alleged, Plaintiff was incarcerated at Taylor C.I., having just arrived on June 26, 2008. Doc. 24, ex. A (doc. 24-1, p. 4).[2]

On June 27, 2008, the day before the incident alleged by Plaintiff in the amended complaint, Defendant Hughes wrote Plaintiff a disciplinary report for lewd and lascivious

---

[2] The citation in parenthesis provides a pin-point citation to the document on the court's electronic docket.

exhibition and Plaintiff was placed in administrative confinement pending resolution of the disciplinary report.  Doc. 24, ex. B (doc. 24-1, p. 5).[3]  On the following day, June 28th, Defendant Hughes was assigned as A-dormitory Housing Officer in the Main Unit of Taylor C.I.  Doc. 24, ex. C (doc. 24-1, p. 7).  The Daily Security Roster indicates that "Confinement Population" was not located in "Dorm A."  *Id.*  Defendant has provided evidence that Plaintiff was not housed in A-dormitory on June 28, 2008, because he had been taken to administrative confinement on June 27, 2010.  Doc. 24, Ex. E (doc. 24-1, pp. 12-13).  Defendant Hughes avers that she has "never, at any time or place, been involved in a physical altercation with" Plaintiff and never struck Plaintiff at any time. Doc. 24, Ex. F (doc. 24-1, pp. 14-15).

Defendant notes that despite the fact that Plaintiff now alleges that the incident having occurred in June, Plaintiff did not report the alleged abuse until November 24, 2008, when Plaintiff filed an informal grievance and he did not even allege the date upon which this occurred in the grievance.  Doc. 24, Ex. G (doc. 24-1, pp. 16-17). Thereafter, an Incident Report for alleged abuse was prepared on December 1, 2008, *Id.* (doc. 24-1, p. 16), and an Inspector General's Investigation was conducted.  Doc. 24, Ex. H (doc. 24-1, p. 18).  In the course of that investigation, Plaintiff made the following assertion:

> I was lying on my bunk and I touched myself and the female officer thought I was gunning her but I wasn't. Once getting off my bunk she began to hit me in the face with the radio and then a Sgt. held my arms and I was struck again with the radio.

---

[3] The disciplinary report asserted that while Defendant Hughes as assigned as A-dormitory housing officer, she observed Plaintiff "laying on his bunk, in plain view of the officer's station, with his exposed penis in his hand, staring directly at" the Defendant while she was in the Officer's Station.  Doc. 24-1, p. 5.

Doc. 24, Ex. I (doc. 24-1, p. 19).  Apparently Plaintiff then told the investigator that the

assault had occurred about six months earlier.  *Id.* (doc. 24-1, p. 18).  The investigation

revealed no injury to Plaintiff.  *Id.* (doc. 24-1, p. 20).

Plaintiff's statement of facts, submitted in opposition to Defendant Hughes'

summary judgment motion, is accepted as sworn testimony.  Doc. 35.  Plaintiff states

that he will testify to every statement made and states the "facts are personally known

by [him] to be true and correct."   Doc. 35, p. 4.  Plaintiff states he arrived at Taylor

Correctional Institution in June, 2008, as a "minimum custody" inmate and was housed

in A-Dormitory.  Doc. 35, p. 2.  Plaintiff states that on his "first day of arrival" at Taylor

C.I., he was housed in A-Dormitory.  *Id.*  The housing officer was Defendant Hughes,

and Plaintiff states that he used the bathroom, and on his way back to his assigned

bunk, he "was stopped by" Defendant Hughes.  *Id.*  "A verbal confrontation ensued after

which [Plaintiff] was ordered to the A-Dormitory laundry room."  *Id.*  Plaintiff says that as

soon as he "entered through the door [he] was immediately struck numerous times in

the face with her radio."  *Id.*  Plaintiff states that "[a] Sergeant Lee responding to her call

entered through the rear door of A-Dormitory laundry room."  *Id.*  Sergeant Lee then

grabbed Plaintiff and lifted him off the floor by his neck.  *Id.*[4]

Plaintiff has provided an affidavit by inmate Eduardo Rodriguez who states that

he has "witnessed severe physical abuse of inmates [at] Taylor Correctional Institution."

Doc. 35, Plaintiff's Appendix 2 (Doc. 35-1, p. 5).  He states the "abuse was performed

---

[4]  The remainder of Plaintiff's statement of facts have nothing to do with the
allegations of the complaint, nor do they concern Defendant Hughes.  Doc. 35, pp. 2-5

by Correctional Officers currently employed at Taylor Correctional Institution." *Id.* An identical affidavit was provided by inmate Tony Lewis Harris. *Id.* (Doc. 35-1, p. 6).

Plaintiff also provided a second "statement of material facts" in which he re-asserts what was provided within his response. Doc. 35-2, p. 1. In this second statement, which he also swears is "true and correct," Plaintiff states that he was "severely beaten by two Correctional Officers" who Plaintiff identifies as Defendant Hughes and Sergeant Lee. Doc. 35-2, p. 1. Plaintiff states the "incident took place in the laundry room of A-dormitory between the hours of 2 PM and 4 PM." *Id.* Plaintiff denies that he was "gunning" at Defendant Hughes as she alleged in the disciplinary report. *Id.* Plaintiff states that in his "over 15 years of incarceration [he has] never indulged in [that] behavior." *Id.* Plaintiff states that Defendant Hughes' "entire summary judgment is falsified and untrue." *Id.* Plaintiff asserts that he was threatened with more abuse if he spoke about what happened, and was placed in confinement to silence him from coming forward with the information. *Id.*

**Analysis**

A claim that excessive and unnecessary force was used by correctional officers is founded upon the Eighth Amendment and requires a showing of "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Relevant to the inquiry will be "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." *Id.* at 320; *see e.g.*, Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991); Ruble v. King, 911 F.Supp. 1544, 1554 (N.D. Ga. 1995).

Furthermore, while the absence of serious injury is relevant to an excessive force claim, that does not end the inquiry. Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998), *citing* Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). In Hudson v. McMillian, the Court stated that "the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997), *quoting* Hudson, 503 U.S. at 10, 112 S. Ct. at 1000 (considering the "physical injury" requirement of the PLRA). "[T]he injury must be more than *de minimus*, but need not be significant." Siglar, 112 F.3d at 193.

Thus, an absence of serious injury to an inmate is only one part of the inquiry. 503 U.S. at 7, 112 S. Ct. at 999; *see also* Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996), *cert. denied* 520 U.S. 1257 (1997). If prison officials did not use force "in a good-faith effort to maintain or restore discipline," but did so "maliciously and sadistically to cause harm" *see* Hudson, 503 U.S. at 7, 112 S.Ct. at 999, an inmate presents a viable claim.

Defendant Hughes has provided evidence that on the date alleged by Plaintiff, Plaintiff could not have been where he said the incident occurred. The evidence shows that on June 27th, Plaintiff was placed in administrative confinement. The evidence reveals that Plaintiff was not in A-dormitory on June 28th when he alleged the assault took place. To create a genuine dispute of material fact, Plaintiff must show that he was with the Defendant on that date. Alternatively, Plaintiff must show that the assault occurred on another date, and must explain why he alleged that it occurred on June

28th.  When confronted with such a direct contradiction of his material allegations,

Plaintiff cannot sit idly by and fail to come forward with proof.[5]

Accordingly, it is **RECOMMENDED** the summary judgment motion filed by

Defendant Hughes, doc. 24, be **GRANTED** in favor of Hughes, that judgment not yet

been entered, and that this case be **REMANDED** for further proceedings concerning

Plaintiff's claim against Defendant Lee.

**IN CHAMBERS** at Tallahassee, Florida, on December 7, 2010.


  s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

[5] While not dispositive, it has not gone unnoticed that Plaintiff has been inconsistent with other material allegations.  The complaint alleges that on June 28, 2008, Defendant Hughes struck Plaintiff numerous times in the face with her radio, that the attack was unprovoked, and that the attack occurred in the laundry room of A-dormitory.  During the Inspector General's investigation, it is reported that Plaintiff said that while Plaintiff was lying on his bunk touching his penis, the Defendant mistakenly believed Plaintiff was "gunning" her and then, after Plaintiff got off his "bunk she began to hit [him] in the face with the radio and then a Sgt. held [his] arms and [Plaintiff] was struck again with the radio."  Doc. 24-1, p. 19.